# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI



**IN RE: LOWE ARTHUR HEWITT**
      **Debtor**

**DEBORAH  ETHRIDGE HEWITT**
      **Plaintiff**

**v.**                                    **CIVIL CASE NO. 1:06cv684LG-RHW**

**LOWE ARTHUR HEWITT**
      **Defendant**

---

### BRIEF OF APPELLANT

---

**L. Arthur Hewitt, Appellant**
**1057 LaSalle Street**
**Biloxi, MS 39530**
**Tel:   228.354.1971**
**Fax:   228.896.0345**

# TABLE OF CONTENTS

**Statutes:**

11 U. S. C. § 523 (a) (5)..............................................................................1,14
11 U. S. C. § 523 (a) (15)...............................................................................21

**Cases:**

*Beacham v. Beacham,* 383 So. 2d 146, 148 (Miss. 1980)................................5
*Davis v. Davis,* 301 So. 2d 154, 156 (Fla. Dist. Ct. App. 1976)....................3
*East v. East,* 493 So. 2d 927, 931-32 (Miss. 1986)........................................3
*First Nat'l Bank of Vicksburg v. Caruthers,* 443 So. 2d 861, 864 (Miss. 1983)........................3
*Ferguson v. Ferguson,* 639 So. 2d 921, 928 (Miss. 1994)...............................6
*In re Benich,* 811 F. 2d 943 (5th Cir. 1987).......................................11,12,19
*In re Cox,* 292 B. R. 141 (2003)...............................................................19,20
*In re Davidson,* 947 F. 2d 1294 (5th Cir. 1991)..........................17,18,19,20
*In re Estate of Hodges,* 807 So. 2d 438, 445 (Miss. 2002)..............................2
*In re Nunnally,* 506 F. 2d 1024 (5th Cir. 1975).....................................11,12,19
*In re Stebbins,* 2002 U. S. Dist. 12213 (N. D. Texas 2002)................18,19,20
*Jones v. Jones,* 917 So. 2d 95 (Miss. App. 2005)...........................................5
*Lion Investbanc L.L.C., et al. v. Ronald James Kennedy, et ux.,*
   2004 U.S. Dist. LEXIS 13407 (E. D. La. 2004).....................................15
*Mabus v. Mabus,* 890 So. 2d 806 (Miss. 2003)...............................................4
*Martin vs. Ealy,* 859 So. 2d 1034 (Miss. App. 2003)...........................2,3,4,5
*Ms. Credit Center, Inc., et al. v. Horton,* 926 So. 2d 167 (Miss. 2006).................9,15
*Newell v. Hinton,* 556 So. 2d 1037 (Miss. 1990)...........................................3
*Smith v. Smith,* 114 Bankr. 457 (Bankr. S.D. Miss. 1990)..................10,11,12,13
*Titan Indem. Co. v. City of Brandon, Miss. ,* 27 F. Supp. 2d 693, 697 (Miss. 1997)..............15
*Travelers Indem. Co. v. Chappell,* 246 So. 2d 498, 510 (Miss. 1971)..............3
*United States v. Texas,* 680 F. 2d 370-71 (5th Cir. 1982)...........................15
*Warren v. Warren,* 815 So. 2d 457, 458 (Miss. App. 2002).............................4
*Wesson v. Wesson,* 818 So. 2d 1272 (Miss. 2002)...........................................5
*Wilson v. Wilson,* 810 So. 2d 615 (Miss. 2002).............................................5

i

## STATEMENT OF BASIS OF APPELLATE JURISDICTION

Jurisdiction of this action is proper in this Court under 28 U.S.C. § 158 (a) (1) or (a) (2), by Appellant having timely filed a Notice of Appeal with the Clerk of the United States Bankruptcy Court, Southern District of Mississippi pursuant to Rules 8001 and 8002 of the Federal Rules of Bankruptcy Procedure.

## STATEMENT OF ISSUES PRESENTED AND APPLICATION STANDARD OF APPELLATE REVIEW

The issues presented by this appeal are as follows:

1. Whether or not the Bankruptcy Judge erred in ruling that the mortgage payments to have been made by defendant under the parties' Final Judgment of Divorce and incorporated Property Settlement Agreement are actually in the nature of support for plaintiff pursuant to 11 U. S. C. § 523 (a) (5)?

2. Whether or not plaintiff, by failing to claim the mortgage payments made by defendant as taxable income on her tax returns is estopped and/or quasi-estopped from thereafter claiming such payments as alimony or support?

3. Whether or not the agreement, as reached during negotiations pertaining to their Property Settlement Agreement between attorneys for the respective parties, to exclude from the terms thereof the  nondischargeability of the mortgage payments made by defendant was accorded proper consideration and weight by the Bankruptcy Judge?

4. Whether or not the agreement, as reached during negotiations pertaining to their Property Settlement Agreement between attorneys for the respective

parties, to exclude from the terms thereof the nondischargeability of the mortgage payments made by defendant takes precedence over the applicability of 11 U. S. C. § 523 (a) (5) and/or (a) (15) and conclusively settles the issue?

By virtue of 28 U.S.C. § 158 (a), and Rule 8013, of the Federal Rules of Bankruptcy Procedure, the standard of appellate review for an appeal bankruptcy is clearly erroneous as to findings of fact *In re Killebrew*, 888 F. 2d 1516, 1519 (5th Cir. 1989), whereas conclusions of law are reviewed *de novo. In re National Gypsum Company*, 208 F. 3d 498, 504 (5th Cir.), *cert. denied*, 531U.S. 871, 121 S. Ct. 172, 148 L. Ed. 117 (2000).

---

## STATEMENT OF THE CASE

---

### Nature of the Case

Following a sixteen (16) year marriage, Appellant, L. Arthur Hewitt, and Appellee, Deborah Ethridge Hewitt, were divorced by Final Judgment of Divorce entered by the Chancery Court of Forrest County, Mississippi on June 19, 2000. (R: PP. 94, Exhibit No. 1, PP. 1-3). No children were born as issue of the marriage. (R: Exhibit No. 1, PP. 2, 4; P. 47). Incident to the divorce, Appellant and Appellee entered into a Property Settlement Agreement (hereinafter the "Agreement") which was ratified and approved by the Chancellor. (R: Exhibit No. 1. PP. 1-3). Appellant, a licensed and practicing attorney, proceeded *pro se* in the divorce matter, while Appellant was represented by independent

iii

counsel. (R: PP. 11-12, 49). The Agreement, among other things, addressed the division of the marital estate and the payment of joint debts. (R: Exhibit No. 1, PP. 4 -13). Specifically, and as to the financial arrangements made, both parties waived any claim to alimony of any kind from the other, and each party further waived any claim to any retirement or similar account of the other, whether then funded or thereafter acquired. (R: Exhibit No. 1. P. 7). Appellant was obliged to execute and deliver unto Appellee a quitclaim deed to the former marital home, and Appellant was to pay the monthly mortgage installments for which the property was pledged as security for payment. (R: Exhibit No. 1 PP. 6-7, 12, 78-79). Finally, Appellant was to pay Appellee twenty-five percent (25 %) of net legal fees on certain pending contingency cases, which amounted to one Ten Thousand Dollar ($10,000.00) payment to Appellee (R: Exhibit No. 1. PP. 7, 14, 96). The Final Judgment of Divorce and the Agreement thereby incorporated as presented to the Chancery Court of Forrest County, Mississippi were drafted by Appellant's attorney (R: PP. 81-83).

Appellant paid the mortgage installments until July, 2003. (R: P. 78). Thereafter, Appellant contends he was financially unable to continue making the payments. (R: PP. 13-14), resulting in Appellee filing a contempt action and Appellant filing a counter-petition for modification in the Chancery Court of Forrest County, Mississippi. (R: PP. 13-14). Pending resolution of the contempt/modification matter, Appellant filed a voluntary

iv

petition for bankruptcy protection on March 22, 2005.[1]  Appellee filed a Motion for Relief

from Stay on March 24, 2005, which relief was denied at the preliminary Hearing held

April 13, 2005.  The denial was confirmed by Order dated April 19, 2005, leading to

Appellee's filing of an Adversary Complaint Objecting to Discharge and to

Dischargeability of Debt. On May 11, 2006, following the adversarial hearing, the

Bankruptcy Judge entered an Order holding that the mortgage payments to be made by

Appellant were payments in the nature of support under 11 U. S. C. § 523 (a) (5), and

therefore not subject to discharge.  This appeal followed.

### Statement of Facts

The facts relevant to the issues presented by the instant appeal, with references

to the record, are as follows:

1.  Appellant and Appellee were divorced by Final Judgment of Divorce of the
Chancery Court of Forrest County, Mississippi entered on June 19, 2000. (R: Exhibit No.
1, PP. 1-2), with no children born as issue of the marriage (R: p. 47).

2.  The Final Judgment of Divorce above-mentioned ratified and approved the
Property Settlement Agreement entered into by and between Appellant and Appellee. (R:
Exhibit 1, P. 2).

3.  The Property Settlement Agreement entered into by and between Appellant and
Appellee, and incorporated into the Final Judgment of Divorce, specifically waived and
relinquished payment or receipt of any kind of alimony, periodic and/or lump sum by
either party. (R: Exhibit 1, Page 7).

---

[1]

Appellant's voluntary petition was filed prior to the implementation of the provisions of the Bankruptcy Abuse
Prevention and Consumer Protection Act of 2005, effective October 17, 2005.

v

4.  The Property Settlement Agreement entered into by and between Appellant and Appellee, and incorporated into the Final Judgment of Divorce, specifically waived any claim by either party to the retirement or similar accounts of the other, whether then existing or thereafter acquired. (R: Exhibit 1, Page 7).

5.  At the time of entering into the Property Settlement Agreement, Appellant's income was sporadic, and at times non-existent and exceeded by Appellee's income. (R: PP. 92-95).

6.  At the time of entry of the Final Judgment of Divorce, Appellant was not an insured under any policy of health or hospitalization insurance, whereas Appellee did have such coverage. (R: PP. 91 - 93).

7.  As of February 10, 2005, Appellee's retirement account was funded in the amount of $28,610.65. (R: Exhibit No. 6, PP. 6-7).

8.  Appellee was represented by counsel during the negotiations and finalization of the Property Settlement Agreement. (R: PP. 49, 80-83).

9.  Appellant agreed execute and deliver unto Appellee a quitclaim deed to the former marital home, and Appellant further agreed to make the monthly mortgage note payments to the mortgagee. (R: Exhibit No. 1, PP. 6-7; 22, 78).

10.  Counsel for Appellee prepared the final draft of the Property Settlement Agreement incorporated into the Final Judgment of Divorce. (R: PP. 49, 81-83).

11.  Counsel for Appellee and Appellant, *pro se,* during negotiations of the terms of the Property Settlement Agreement, agreed that Appellant's obligation to pay the mortgage installments for the former marital home would be subject to discharge should Appellant subsequently file for bankruptcy protection.  (R: PP. 81-83).

12.  The Final Judgment of Divorce and Property Settlement Agreement did not, by any term or provision, prohibit Appellant from discharging the mortgage installments for the former marital home.  (R: Exhibit No. 1, P. 7, PP. 82-83).

13.  Appellant paid the mortgage installments for the former marital home through July, 2003. (R: PP. 72-73, 78).

vi

14.  Appellee did not claim the mortgage payments made by Appellant as income for the pertinent tax years (R: PP. 78-79).

15.  Appellant did not deduct the mortgage payments made by him from taxable income for the pertinent years.  (R: PP. 37).

## ARGUMENT AND AUTHORITIES

### Summary of the Argument

This proceeding is an appeal from the United States Bankruptcy Court, Southern District of Mississippi, which Court, following an adversarial hearing, entered an Order on May 11, 2006, holding that mortgage payments to be made by Appellant incident to a divorce Property Settlement Agreement (hereinafter the "Agreement") were payments in the nature of support, and therefore not subject to discharge under 11 U. S. C. § 523 (a) (5).  For the reasons discussed below Appellant contends that the mortgage payments are not alimony, support or maintenance or payments in the nature thereof, but rather, are dischargeable as property settlement.   Appellant respectfully submits that the learned Bankruptcy Judge's was clearly erroneous to the extent that findings of fact were made, and that upon *de novo* review of the Bankruptcy Court's conclusions of law, this Court will reverse and remand. Appellee's contentions are understandably squarely opposite.

11 U. S. C. § 523 (a) (5), in pertinent part, provides:

(a)   A discharge under section 727...of this title does not discharge an individual debtor from any debt...

(5) to a spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other court of record, determination made in accordance with State or territorial law by a governmental

1

> unit, or property settlement agreement, but not to the extent that...
>
> (B) such debt includes a liability designated as alimony, maintenance or support, *unless such liability is actually in the nature of alimony, maintenance or support.* (Emphasis supplied).

The Final Judgment and incorporated Agreement by which Appellant and Appellee were divorced sets out plainly and clearly that:

> "Wife and Husband each waive and relinquish any claim against the other for any kind of alimony, periodic and/or lump sum; and, each of the parties waive [sic] and relinquish [sic] any claim against any retirement and/or similar account(s) presently or hereafter acquired by the other party." (R: Exhibit No. 1, P. 8).

As observed by the Court of Appeals of Mississippi in *Martin v. Ealy,* 859 So. 2d 1034 (Miss. App. 2003), the determination of whether or not a particular monetary provision is to be considered as being in the nature of alimony or property division, rests upon examination of the property settlement agreement incorporated into the final judgment of divorce. *Id.,* at p. 1037. At issue in *Martin v. Ealy* was the requirement that Mr. Martin pay for life insurance coverage on himself with his former wife as primary beneficiary. Inasmuch as alimony had been specifically waived in the parties' separation agreement, Martin maintained that continuation of the life insurance as recited elsewhere in the agreement constituted a payment in the nature of alimony, modifiable upon his ex-wife's remarriage or the emancipation of their son, both of which events had occurred subsequent to the divorce. The Chancery Judge disagreed and required Martin to reinstate the life insurance coverage as previously provided for in the separation agreement. On appeal, the

2

Court of Appeals affirmed, offering the following guidance en route to its decision:

"Separation agreements like property settlement agreements are contractual obligations (Citing *In re Estate of Hodges*, 807 So. 2d 438, 445 (Miss. 2002). "The provisions contained within a property settlement agreement executed prior to a dissolution of marriage, purporting to resolve the parties' property rights, are interpreted by the Courts as any other contract. *Id.* The Mississippi Supreme Court has long recognized that:

Parties may upon dissolution of their marriage have a property settlement incorporated in the divorce degree, and such property settlement is not subject to modification. A true and genuine property settlement agreement is no different from any other contract, and the mere fact that it is between a divorcing husband and wife, and incorporated into a divorce decree, does not change its character. *East v. East,* 493 So. 2d 927, 931-32 (Miss. 1986). "The right of persons to contract is fundamental to our jurisprudence, and, absent mistake, fraud and/or illegality, the courts do not have the authority to modify, add to, or subtract from the terms of a contract validly executed between two parties." *First Nat'l Bank of Vicksburg v. Caruthers,* 443 So. 2d 861, 864 (Miss. 1983).

Moreover, "this Court will not rewrite contracts where they are not illegal, immoral or contrary to established public policy." *Travelers Indem. Co. v. Chappell,* 246 So. 2d 498, 510 (Miss. 1971). The "fundamental consideration is the intention of the parties based upon a reasonable construction of the entire settlement agreement. *Hodges,* 807 So. 2d at 445 (quoting *Davis v. Davis,* 301 So. 2d 154, 156 (Fla. Dist. Ct. App. 1976). In interpreting the intention of the parties when examining the settlement agreement, the Supreme Court in *Newell v. Hinton,* 556 So. 2d 1037 (Miss. 1990), stated "intent of the parties is crucial in contract interpretation. Of course, it must be understood that the words employed in a contract are by far the best resource for ascertaining intent and assigning meaning with fairness and accuracy. *Id.,* at 1042.

859 So. 2d at 1037-1038.

Utilizing the cited prior authorities, the *Martin v. Ealy* Court found nothing within

the separation agreement there under scrutiny which suggested that the life insurance provision was a form of support or maintenance. Considering further that both Martin and Ealy had, by an additional provision of their agreement covenanted that the "...provisions of the agreement shall be binding upon their respective heirs, assigns, and administrators," the Court of Appeals determined that Martin and Ealy had agreed under oath that they had resolved all marital claims, including alimony, signed and presented the agreement for approval by the Chancery Judge who approved the agreement, and incorporated it into the final judgment, from which no party appealed. The *Martin v. Ealy* Court accordingly ruled that the parties had entered into a binding contract, and that the life insurance provision was not in the nature of periodic alimony and therefore not subject to modification. *Id.,* at 1038.

Under Mississippi domestic relations law, divorcing parties may waive payment of and receipt of alimony. *Mabus v. Mabus,* 890 So. 2d 806 (Miss. 2003)(Prenuptial agreement waiving alimony enforced in divorce proceeding due to adequacy of each party's separate estate); *Martin v. Martin,* 859 So. 2d 1034, 1037 (Miss. App. 2003)(Both parties waived alimony with wife to remain beneficiary on husband's life insurance policy unless change of beneficiary agreed to by wife); *Warren v. Warren,* 815 So. 2d 457, 458 (Miss. App. 2002) (Wife given portion of proceeds of sale of marital home owned by husband prior to marriage in exchange for payment to husband of a portion of wife's retirement). In the

4

*Martin* and *Warren* cases the Mississippi Supreme Court determined that the payments under consideration were not intended for support, but rather a property settlement, despite the respective arguments to the contrary. *Martin, supra.,* at p. 1038; *Warren, supra.,* at p. 460-61, *Martin v. Ealy, supra.*

Appellee, in her Brief in Support of Complaint Objecting to Discharge or the Debtor, or Alternatively, Complaint to Determine Dischargeability of Certain Debts as submitted to the Bankruptcy Court, relied heavily on three (3) Mississippi state court decisions, *Jones v. Jones,* 917 So. 2d 95 (Miss. App. 2005), *Wesson v. Wesson,* 818 So. 2d 1272 (Miss. 2002) and *Wilson v. Wilson,* 810 So. 2d 615 (Miss. 2002), in support of the proposition that payment of mortgage installments for the benefit of the former spouse is to be considered alimony or in the nature of such an award. The *Wilson* and *Wesson* cases are clearly distinguishable from the case at bar and easily dispatched, as in each decision, the facts demonstrate that the Chancellor determined at *trial* that mortgage payments were to be considered alimony or support. (Emphasis supplied). The case *sub judice* does not involve a contested evidentiary trial of the merits of the issues presented by the respective parties. The *Jones* court also determined that mortgage payments were in the nature of alimony. *Id.,* at. P. 98.

[1] However, two (2) observations made by the *Jones* Court are helpful to the present

---

[1]

    The Jones's original divorce proceeding centered upon a marital dissolution agreement which stipulated that the former marital home would continue to be jointly owned with Mrs. Jones having the "exclusive use and possession" thereof with Mr. Jones made liable for the mortgage installments and insurance costs. The determination by the Chancellor that this arrangement was in the nature of alimony benefitting Mrs. Jones was made in subsequent

inquiry:

> "Alimony is not a bounty to which [the ex-spouse] became entitled to receive indefinitely simply by the fact that at one time [he or she] had been married" (Citing *Beacham v. Beacham*, 383 So. 2d 146, 148 (Miss. 1980);

and, that

> "Distribution of marital property should be accomplished with the goal "to finalize the division of assets and conclude the parties legal relationship. Leaving them each in a self-sufficient state, where the facts and circumstances permit total dissolution." (Citing *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994).

917 So. 2d at P. 101.

Appellant would point out that both he and Appellee were represented by counsel in the divorce, specifically the negotiations for inclusion of the terms and provisions to be contained in the final draft of the Agreement thereafter submitted unto the Chancellor for approval. Appellant and Appellee agreed that each party waived any form of alimony from the other, that Appellant would pay the mortgage installments attributable to the former marital home, and that Appellant's responsibility for such payments would not be excluded from discharge should Appellant subsequently seek bankruptcy protection. Furthermore, the Agreement recited in Item XV, entitled "WARRANTIES AND REPRESENTATIONS" that:

> "It is mutually understood that this Agreement is entered into only after considerable negotiation and as a result of much thought and deliberation by and on behalf of each of the parties hereto and with the distinct

---

contempt/modification litigation over seven (7) years later. *Jones*, at pp. 97-98.

understanding that it shall be construed as a final settlement between the parties of all property, alimony, or other financial rights arising out of the marital contract and/or otherwise; and, it is entered into voluntarily by both parties after full and complete disclosure by both Wife and Husband as to all property rights owned, controlled or possessed by them, and, after mature deliberation and having in mind the financial status of each of the parties hereto and all property owned, controlled or possessed by them and each of them, the foregoing is declared to be a fair, reasonable, equitable and just settlement." (R: Exhibit No. 1, P. 12).

Appellant and Appellee made the above provision to place beyond any doubt the fact that all marital rights existing between were considered, accounted for and addressed by the Agreement in order to make a final and complete dissolution of the marriage.   The subject Agreement between Appellant and Appellee further provided that the provisions thereof were binding upon "...the heirs, executors, administrators, personal representatives and assigns of the parties..." (R: Exhibit No. 1, P. 12).   These facts are closely parallel to the *Martin v. Ealy* decision, which disallowed the re-characterization of the nature of financial benefits owed by Martin to Ealy.

The following exchange occurred on cross-examination between counsel for Appellant and Appellee during the adversarial hearing:

Q.    There was a discussion during the course of your negotiations regarding the

provisions about the payment of the house notes that Dawn (counsel for

Appellee during the divorce proceedings) actually suggested there be some

language in the property settlement agreement that the payment of the house

7

notes not be dischargeable in bankruptcy? (Parenthetics supplied).

A.     What Dawn said, as I recollect, and I thought it was in there that would not

be dischargeable in bankruptcy.  Dawn and I went back and changed some

things and Art left me with all the debt.  There is [sic] things like that that

were reworded.  But no, I remember.  And, in fact, I was surprised when I

went to look that that was not in there.  Art also puts in his pleadings that

nothing is even due to bankruptcy that these things would not be

dischargeable.

Q.     So that decision was held, wasn't it?

A.     It was.

A few lines further, we read:

Q.     But in any case Dawn did modify the language and it's not in the judgment

is it?  That language is not in the judgment is it?

A.     The language is not in the judgment.  I do not know how or why it is not.

Q.     But Dawn prepared the judgment, didn't she?

A.     If it said she did, she did.

Q.     You signed it?

A.     I did.

Q.     She is your lawyer?

8

A.   Yes. Am I missing the point? (R: PP. 79-83).

Clearly, Appellee and her attorney were aware that Appellant would not and did not agree for Appellant's obligation to pay the mortgage payments to be placed beyond discharge in bankruptcy.   The matter was negotiated at length, with the result that Appellant's said obligation was not made non-dischargeable.  It is of no consequence that Appellee subsequently testified that she "thought" the non-dischargeability provision had been included in the agreement or that she was "surprised" that it was not.  Appellee read the Agreement, signed it and requested that it be offered to the Chancellor for approval through her attorney.  As recently stated by the Mississippi Supreme Court in *Ms. Credit Center, Inc., et al. v. Horton*, 926 So. 2d 167 (Miss. 2006):

> "Under Mississippi law, however, parties to a contract have an inherent duty to read the terms of a contract prior to signing; that is, a party may neither neglect to become familiar with the terms and conditions and then later complain of a lack of knowledge, nor avoid a written contract merely because he or she failed to read it or have someone else read and explain it." (Citation omitted).  Horton may not escape the agreement by simply stating that she did not read the agreement or understand its terms.

926 So. 2d at p. 178.

Appellee, during all times material, was represented by counsel.  Appellant submits that Appellee's attorney knew that for the mortgage payments to be non-dischargeable, such payments would have to be characterized as an award of alimony or in the nature of alimony.  These matters were discussed in detail, leading to the result that alimony of any

9

kind was waived and the obligation to make the mortgage payments not made non-dischargeable. Appellant submits further that under the facts and circumstances presented, all involved knew that Appellant might thereafter be compelled to resort to bankruptcy protection, and that the mortgage payment obligation, by agreement, would not be precluded from discharge in such event. That is, the matter of Appellant's potential discharge of the mortgage payment obligation was laid openly on the table, discussed, considered and agreed upon by means of arm's length negotiations. Appellee has neither complained that any sort of fraud accompanied the negotiation and execution of the Agreement under consideration, nor has she proposed that the Agreement is illegal, immoral or void as against any public policy.

Notwithstanding the foregoing, the Bankruptcy Court found the mortgage payment obligation to be in the nature of alimony and therefore non-dischargeable. The inquiry then necessarily focuses then on what sorts of monetary awards flowing from one former spouse to the other incident to a divorce and property settlement agreement are to be considered as being in the nature of alimony when alimony or support has been specifically waived by the parties.

In *Smith v. Smith*, 114 Bankr. 457 (Bankr. S.D. Miss. 1990) the Bankruptcy Court considered the matter, and observed that:

> "In considering whether the obligations are actually in the nature of alimony, maintenance or support, the Court must look to federal bankruptcy law and

10

the intent of the parties. (Citation omitted).  However, state law may be looked to for guidance on the issue of whether an obligation is in the nature alimony, maintenance or support.  (Citation omitted).  Furthermore, it has long been the rule that the whole subject of domestic relations belongs to the law of the various states.  (Citation omitted).  Nothing in the Bankruptcy Code reflects any intent to alter this rule.  *Id.*, at p. 461-462.;

and further that:

"The Bankruptcy Code does not define "alimony, maintenance or support." Under federal case law, the proper test lies in proof of whether it was the intention of the parties that the payments be for support rather than a pure property settlement agreement.  *Id.*, at p. 462.

The Smith Court, citing *In re Nunnally*, 506 F. 2d 1024 (5th Cir. 1975) and *In re Benich*, 811 F. 2d 943 (5th Cir. 1987) enumerated some of the factors recognized by the Fifth Circuit which evidence whether the provisions of a divorce agreement constitute property settlement as opposed to alimony and support obligations.  The factors include:

"...disparity in earning power of the parties, their relative business opportunities, the probable future need for support of the spouse who receives payments, their relative physical condition, the recipient's educational background and probable future need for support, the fault for the breakup, and the benefits the innocent spouse would have received had the marriage continued." *Id.*

Importantly, the *Smith* decision observes that the Court must examine *only* the circumstances surrounding the agreement at the time of the divorce in order to ascertain the intention of the parties.  *Id.* *(Citations omitted) (Emphasis in original).*

Application of these criteria to the facts presented by the *Smith* case compelled the Court to find virtually all of Mr. Smith's obligations to be alimony, maintenance or support

11

or in the nature thereof.  This result obtains in Appellant's view inasmuch as a portion of

the monthly payments to the recipient were designated in the divorce agreement as lump-

sum alimony, another portion of the monthly payments were clearly designated as child

support; while payments made for medical coverage for the parties' child, insurance

coverage for the ex-wife and child, and payment of the mortgage on real property conveyed

to Mr. Smith held for the benefit of the parties' child were considered in the nature of

support.  Application of the *Nunnally/Benich* criteria to the separation agreement at issue

in *Smith* revealed to the Court the following facts; (1) the husband was a licensed and

practicing certified public accountant while the wife had been employed as a legal

secretary, (2) the earning potential of the husband exceeded by far that of the wife, (3)

looking forward, the parties believed that the wife would continue to incur expenses for

insurance, housecleaning and other services, and (4) the wife anticipated a substantial future

income as the spouse of a successful CPA. *Id.*   In contrast, Appellant respectfully directs

the Court's attention to the fact that the divorce agreement under consideration in *Smith*

did not provide for the waiver of alimony which the subject Agreement specifically

included. *Id.*, at PP. 458-460.  Further, the Smiths were the parents of a minor child. *Id.*, at

PP. 458-59.  Again, an important consideration which is not present in the instant case.

Finally, the payments not specifically labeled as alimony or child support in the *Smith* case

were payments in the nature of continuing support for Mrs. Smith or the parties' child. *Id.*,

at PP. 462-63. Such crucial differences in the facts of *Smith* and the case at bar, in

Appellant's view, render *Smith* clearly distinguishable and of limited, if any, applicability

to the present matter.

Appellant, without conceding the applicability of the *Nunnally/Benich* factors to the

case now before the Court, proposes that even if the such criteria are applicable, the

outcome should not be the same. Taken in the order discussed in *Smith*, the analysis

produces the following results:

1.    Disparity in earning power of the parties: The record of the adversary
      proceeding demonstrates that at the time of the divorce between Appellant
      and Appellee, Appellant's income was, and had been for several years,
      sporadic at best and nonexistent at worst. Appellee held a regular job with
      a monthly salary and benefits (R: PP. 92-95);

2.    Their relative business opportunities: Appellant had none other than to
      continue to engage in the private practice of law, primarily as a plaintiff's
      personal injury attorney, which had not been lucrative for approximately five
      (5) years prior to the divorce. (R: PP. 18, 94).   Appellee was a salaried
      employee of the State of Mississippi (R: P. 71);

3.    The probable future need for support of the spouse who receives payments:
      Appellee did not receive the mortgage payments. The mortgage installments
      were paid directly by Appellant to the mortgagee (R: P. 12). At the time of
      the Agreement, neither Appellant nor Appellee was financially capable
      individually of paying the mortgage. (R: PP. 22, 79);

4.    The relative physical condition of the parties: Appellant had been
      hospitalized with a pulmonary embolism. (R: P. 39). Appellee recognized
      that at the time the agreement was executed, Appellant was "... in a time of
      crisis..." (R: p. 93), and that Appellant was"...ill and would get better." (R: p.
      95-96). Appellee had experienced increased medical expenses since 1999, the
      nature of which were not provided (R: P. 92);

13

5.    The fault for the breakup: Appellant and Appellee were divorced on grounds of irreconcilable differences.  (R: Exhibit No. 1, PP. 1-4);

6.    The benefits the innocent spouse would have received had the marriage continued: In the context of an irreconcilable differences divorce, there is no innocent or guilty spouse; however, Appellee would have received few, if any, benefits, financial or otherwise, had the parties' marriage continued. (R: PP-. 18, 94-95).

As instructed by the *Smith* Court, the touchstone in determining whether financial assistance from one spouse to the other is determined to be for support or property settlement, is controlled by the intent of the parties at the time of the execution of the agreement. *Id.*, at p. 462.  A recent decision of the Fifth Circuit Court of Appeals echoes the long standing rule of this Circuit under bankruptcy law that:

> "...the intent of the parties at the time a separation agreement is executed determines whether a payment pursuant to the agreement is alimony, support or maintenance within the meaning of Section 523 (a) (5). (Citations omitted). A written agreement between the parties is persuasive evidence of their intent. (Citations omitted). Thus, if the agreement between the parties clearly shows that the parties intended the particular debt in question to reflect either support or a property settlement, then that characterization will normally control. (Citations omitted).  On the other hand, if the agreement is ambiguous, then the court must determine the parties' intentions by looking to extrinsic evidence. "

*In re Littleton*, 2006 U. S. App. LEXIS 15247, *citing In re Evert*, 342 F. 2d 358, 363 (5th Cir. 2003).

The record below clearly shows that the settlement of the parties' marital rights was memorialized by a document entitled "Property Settlement Agreement" (R: Exhibit No. 1,

P. 4), and that Appellant intended for the mortgage payments to be a part of a property

settlement. (R: P. 37).  Appellee did not know if the mortgage payments were to be in the

nature of alimony or support. (R: PP. 78-79).  Once more, Appellant considers it manifestly

important that Appellee was represented by independent counsel in the negotiation,

explanation, drafting and execution of the property settlement agreement.  (R; PP. 49, 80-81,

83).  Any confusion or misunderstanding regarding the nature of the mortgage payments,

discharge in bankruptcy, and all other issues on the part of Appellee were a matter for

explanation and understanding between Appellant and her attorney.  The effect of the

terms and provisions of the agreement at issue cannot be avoided by a post-execution

assertion of a lack of understanding. *Ms. Credit Center, Inc., et al. v. Horton, supra,* at P.176

citing *Titan Indem. Co. v. City of Brandon, Miss. ,* 27 F. Supp. 2d 693, 697 (Miss. 1997).  As

stated in *Lion Investbanc L.L.C., et al. v. Ronald James Kennedy, et ux.,* 2004 U.S. Dist. LEXIS

13407 (E. D. La. 2004):

> "...it is also well-established that "an *attorney of record is presumed to have authority* to compromise and settle litigation of his client, and a judgment entered upon an agreement by the attorney of record will be set aside only upon *affirmative proof* of the party seeking to vacate the judgment that the attorney had no right to consent to its entry." (Citations omitted)(Emphasis in original). See also: *United States v. Texas,* 680 F. 2d 370-71 (5th Cir. 1982).

Appellee has neither asserted that her attorney did not have the authority to

negotiate and agree to the terms of the subject Agreement, nor to the incorporation thereof

into the final judgment of divorce.  Accordingly, Appellee's contentions, if made, that she

did not know the nature of the mortgage payments or realize or understand the effect of the language employed (R: p. 78, 80-83) should be found to be without merit. Appellant respectfully points out that Appellee has not mentioned in any fashion, much less formally alleged, that the Agreement under consideration or any of its terms are ambiguous and therefore in need of clarification by means of extrinsic evidence. Even if such were the case, any supposed ambiguities contained in the Agreement would be construed against Appellee, whose attorney drafted the document. *Beezley v. Beezley,* 917 So. 2d 803, 805 (Miss. App. 2005); *Action Indus. v. United States Fid. & Guar. Co.,* 358 F. 3d 337, 339 (5th Cir. 2004).(R: PP. 49, 82-83). Following *Littleton,* there is no call, absent ambiguity, to inquire further into the matter of the parties' intent at the time of the execution of the Agreement. Appellant and Appellee, beyond peradventure and utilizing the plainest language available, each waived alimony of any kind and nothing before the Court suggests otherwise. Additionally, the prospect of Appellant seeking bankruptcy protection was recognized and discussed prior to the execution of the Agreement, resulting in the non-dischargeability of the mortgage by Appellant being purposefully omitted therefrom. Appellant humbly submits that the intent of he and Appellee existing at the time of the execution of the Agreement, as ascertained from the unambiguous terms and provisions therein set out, was that neither alimony nor anything akin to it were to be paid, and that Appellant's payment of the mortgage installments would be subject to potential discharge in bankruptcy.

As mentioned above, without an allegation of ambiguity in the Agreement, determination of the parties' intent at the time of execution is unnecessary, and the language of the Agreement controls. *In re Littleton, supra.* If however, the parties' intent must be determined, Appellant suggests that as a matter of law such intent may be determined by examination of the tax treatment afforded the mortgage payments and other monies paid by Appellant to Appellee. Appellant and Appellee separated in May, 2000. (R: Exhibit No. 1, p. 1). Appellant paid the mortgage notes on the former marital home until July, 2003, or for thirty-nine (39) months. (R: P. 78). The monthly amount paid was Eight Hundred and Thirty One and no/100 Dollars ($831.00) (R: P. 12, 23, 29), for a total paid of approximately Thirty Two Thousand Four Hundred Nine Dollars and no/100 ($32,409.00). Appellant, pursuant to the agreement also paid Appellee Ten Thousand Dollars and no/100 ($10,000.00) from a case settlement. (R: PP. 16, 50, 96). No portion of these payments were claimed by Appellant as deductions on his income tax returns (R: P. 37), and Appellee did not include any portion of the payments as reported taxable income. (R: PP. 78-79). These facts, in Appellant's view, are dispositive, of the issue of the parties' intent at the time material to the inquiry.

*In re Davidson*, 947 F. 2d 1294 (5th Cir. 1991) presented the Fifth Circuit Court of Appeals with the issue of whether or not a debtor, obligated to make monthly support and maintenance payments to his ex-wife in accordance with their divorce agreement, could

17

discharge the payments in bankruptcy. *Id.*, at PP. 1295-96.  The payments were, by the express language of the agreement, made taxable to  the recipient and deductible to the debtor. *Id.* After making the payments for four (4) years, the debtor ceased the payments, resulting in a state court judgment in favor of his ex-wife and the filing of a Chapter 7 petition for bankruptcy relief by the debtor. *Id.*   Although the Bankruptcy Court and the District Court considered the payments dischargeable as being in the nature of a property settlement, the Fifth Circuit Court of Appeals reversed, finding that the doctrine of quasi estoppel resolved the issue. *Id.*, at PP. 1296-97.    Writing for the Court, Circuit Judge Smith's opinion recites that:

> "One form of estoppel, quasi estoppel, forbids a party from accepting the benefits of a transaction or statute and then subsequently taking an inconsistent position to avoid the corresponding obligations or effects (Citations omitted).   Mr. Davidson has accepted the benefits of his agreement: he has taken tax deductions for the payments to Mrs. Davidson. He now tries to escape the bankruptcy effects of his election to treat the payments as alimony." *Id.*, at p. 1297.

The *Davidson* opinion recites further that:

> "To uphold discharge of those payments in bankruptcy would reward an admitted manipulation tantamount, at best, to deception. That Mr. Davidson did not know he would go broke when he agreed to the divorce settlement is not an uncommon scenario, but offers him no excuse for discharging the payments he chose to characterize as alimony."  *Id.*

The reasoning of *Davidson* has been recently applied and followed in *In re Stebbins,* 2002 U. S. Dist. 12213 (N. D. Texas 2002), a case in which the issue arose in the context of

18

a motion for summary judgment filed by the recipient ex-spouse. *Id.* Under consideration

was the debtor's obligation in a separation agreement to pay monthly mortgage payments

on a condominium which the parties had termed alimony, taxable to the ex-wife and

deductible to the debtor. As in *Davidson*, the parties gave the payments the tax treatment

agreed upon for three (3) years until Mr. Stebbins filed bankruptcy. The *Stebbins* Court

made short shrift of the debtor's argument for discharge on appeal, finding that the

Bankruptcy Court has correctly ruled that *the tax treatment alone* was sufficient to apply the

doctrine of quasi estoppel against the debtor and affirming the grant of summary judgment

in favor of the ex-wife. (Emphasis supplied). Application of the *Nunnally/Benich* factors

was unnecessary. *Id.*

Likewise, the Bankruptcy Court for the Eastern District of Texas, Sherman Division,

in the adversary case of *In re Cox*, 292 B. R. 141 (2003) determined that the doctrine of quasi

estoppel of sufficient import to resolve the matter of whether or not "spousal maintenance"

payments under a Agreed Decree of Divorce were a property settlement agreement or

maintenance, alimony or support. In a posture procedurally similar to the *Stebbins* case as

a ruling on the ex-spouse's motion for summary judgment, the *Cox* Court stated that:

> ""While a bankruptcy court is not bound by the labels used by the parties of
> the state court that define an item as support or property settlement (Citation
> omitted), neither is there any law to prohibit it from adopting that Court's
> characterization. Usually, in deciding whether to characterize an agreement
> as an alimony, maintenance or support obligation or a property settlement,
> a bankruptcy court must examine what function the parties intended the

agreement to serve when they entered into it, and the same is a question of fact for the bankruptcy court to decide. (Citations omitted). ***However, there is an exception to this rule created by the doctrine of quasi estoppel. "Quasi estoppel," forbids a party from accepting the benefits of a transaction or statute and then subsequently taking an inconsistent position to avoid the corresponding obligations or effects."*** (Citations omitted)(Emphasis supplied).

*In re Cox*, 292 B. R. at p. 147.

In the matter presently before the Court, Appellant contends that the doctrine of quasi estoppel as described in *Davidson, Stebbins* and *Cox* has the identical effect, the doctrine simply being applied in reverse.   Appellant did not deduct the payments made to and on behalf of Appellee from his taxable income, and Appellee did not declare such payments as taxable income. This is so due to the fact that neither Appellant, Appellee, nor Appellee's attorney considered the payments as alimony, maintenance or support requiring the tax treatment applicable to those kinds of payments and receipts.   Appellee, having taken advantage of the payments from Appellant as being non-taxable should be, based upon the doctrine of quasi estoppel, prohibited from now characterizing such payments as being in the nature of alimony. *Davidson, Stebbins. supra.*   Under the rationale of *Cox, supra.,* the determination of the intent of the parties at the time the particular agreement was entered into is outweighed by application of the doctrine of quasi estoppel, which is outcome determinative. *Cox* makes it clear that application of the doctrine operates as an exception to the rule of fact finding by the Court to arrive at the parties' intent.   Appellee

20

has taken the benefit of the parties' bargain at a considerable savings to her, and she should not now be allowed to characterize the mortgage payments made as being in the nature of support and therefore non-dischargeable. As worded by Circuit Judge Smith in *Davidson*:

> "Although detrimental reliance is not a necessary element of quasi estoppel, we find that the existence of detrimental reliance in this case is an important factor disfavoring Mr. Davidson's position. Mrs. Davidson detrimentally relied upon the characterization of the payments as alimony." *Id.*, at P. 1297.

Taxwise, Appellant relied upon the mortgage payments as not being considered as alimony or a substitute therefor, as did Appellee. As demonstrated by the record below, Appellant owes approximately Twenty Eight Thousand Eighty One Dollars and 34/100 ($28,081.34) in unpaid federal income taxes (R: P. 45). Appellant represents unto the Court that having been allowed the deductions for payment of the mortgage installments would have not caused this liability. However Appellant, in reliance upon the terms of the subject Agreement which recited that the payments were not maintenance, alimony, support, or payments in the nature thereof, and therefore non-deductible, has acted to his detriment now that such payments have been characterized as being in the nature of support. Neither party treated the payments as income to Appellee or deductible to Appellant, nor did they intend to by virtue of the understandings reached at the time of their divorce. These simple and plain facts alone are more than sufficient to find that Appellee should not be allowed to now characterize the payments as non-dischargeable by Appellant.

Not mentioned by the Bankruptcy Court in the adversary hearing or in its Order was

21

the applicability of 11 U. S. C. § 523 (a) (15).  Appellant does not here submit argument or authorities pertinent to whether 11 U. S. C. § 523 (a) (15) applies to the present inquiry inasmuch as such statute was not addressed by the Bankruptcy Court.  Appellant would, however, point out that the applicability of 11 U. S. C. § 523 (a) (15) was briefed to the Bankruptcy Court by counsel prior to the adversary hearing; and, that much of the testimony therein offered by the parties focused upon the applicability of said statute.  Of noteworthy importance is the fact that counsel for Appellee admitted that the adversary proceeding was conducted pursuant to 11 U. S. C. § 523 (a) (15). (R: P. 75).    Appellant would, to the extent allowable by the Court, reserve the opportunity to amend this brief to address the applicability of 11 U. S. C. § 523 (a) (15) to this case.

## CONCLUSION

The applicable decisions of the Fifth Circuit hold that a determination of whether payments made to an ex-spouse are property settlement or in the nature of alimony, maintenance or support turns on ascertainment of the intent of the parties at the time the agreement was entered into, should the provisions of the agreement be found ambiguous. In the present case, the issue of ambiguity has not been put forward by Appellee or so found by the Court, with the result that the Agreement under consideration should stand as written, executed and approved by the Chancery Court.  Further, Appellant and

22

Appellee, through counsel, negotiated the dischargeability *vel non* of the mortgage payments at issue, resulting in an agreement that such payments would not be made non-dischargeable.  Finally, the doctrine of quasi estoppel forbids Appellee from claiming the benefit of the characterization of payments as property settlement for income tax purposes and thereafter refuting such classification to avoid the consequences.  For such reasons and following the authorities offered in support, Appellant respectfully contends that the decision of the Bankruptcy Court was clearly erroneous as to its findings of fact, that the Bankruptcy Court's conclusions of law should be reviewed *de novo*, and that the Order of the Bankruptcy Court should be reversed and rendered.

Respectfully submitted,

l. **Arthur Hewitt, Appellant,** *Pro Se*
**1057 LaSalle Street**
**Biloxi, MS 39530**
**Tel:    228.374.1971**
**Fax:    228.896.9345**

23

## CERTIFICATE OF SERVICE

I, l. Arthur Hewitt, do hereby certify that I have this day served by United States mail, postage fully prepaid, a true and correct copy of the above and foregoing Brief of Appellant upon counsel or record for appellee, Deborah Ethridge Hewitt, as follows:

**Hon. Robert M. Marshall**
**311 South 10th Avenue**
**Hattiesburg, MS 39401**

**THIS, the** 8TH **day of** November, **2006.**

**L. Arthur Hewitt**